NOT DESIGNATED FOR PUBLICATION

No. 119,127

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DIANE E. and THOMAS G. SCANLON,
*Appellants*,

v.

BOARD OF COUNTY COMMISSIONERS OF
JOHNSON COUNTY, et al.,
*Appellees.*

MEMORANDUM OPINION

Appeal from Johnson District Court; JAMES F. VANO, judge. Opinion filed March 8, 2019. Affirmed.

*Mary Jo Shaney*, *Aaron G. March*, and *Kevin Mason*, of Rouse Frets White Goss Gentile Rhodes, P.C., of Kansas City, Missouri, for appellant.

*Richard J. Lind*, assistant county counselor, Johnson County Legal Department, for appellees.

Before BUSER, P.J., POWELL, J., and STUTZMAN, S.J.

PER CURIAM: Diane and Thomas Scanlon (Scanlons) appeal from the district court's memorandum decision granting the motion of the Johnson County Board of County Commissioners (Board) and Johnson County (the County) to dismiss the Scanlons' appeal from the Board's decision to grant a conditional use permit (CUP).

1

FACTS AND PROCEDURAL BACKGROUND

The Scanlons owned and lived in a residence in an unincorporated part of southern Johnson County. On October 24, 2016, LC Town, LLC (LC), on behalf of property owners Michael K. Miller, Daniel J. Miller, and Kelly M. Miller, filed an application for a CUP with the Johnson County Planning Department, seeking use of an approximately 20-acre tract of land at the southwest corner of 191st Street and Nall Ave. as a "baseball training academy," to include a "new training facility for recreational baseball leagues," with a "new outdoor field and building for indoor training." The application proposed the facility would be operated by Advanced Baseball Academy (ABA), which had an indoor facility in Stilwell. The tract for which the CUP was sought was zoned for rural residential use. That property is located immediately east of the Scanlons' residence and had been used for baseball for a number of years on a basis that was private and more limited than that proposed through the CUP application.

On January 4, 2017, the Aubry-Oxford Consolidated Zoning Board (Zoning Board) met to consider the CUP application and unanimously passed a motion recommending that the Board deny the application. The Board met to consider the application on February 9, 2017. As they did before the Zoning Board, the Scanlons opposed the application, and the Board unanimously decided to remand the CUP application to the Zoning Board to consider: (1) whether the proposed use violated any part of the County's comprehensive plan; (2) whether the proposed use would be allowed through a CUP under the County's zoning regulations; and (3) traffic implications of the proposed use.

The Zoning Board considered the application for the second time on April 5, 2017. The Scanlons presented expert opinion that: the proposed use was incompatible with the surrounding neighborhood and approval of the application would significantly deviate from major principles of the comprehensive plan; zoning regulations did not allow a

2

commercial athletic complex by means of a CUP; existing traffic and safety issues would be exacerbated; approval would lead to other commercial uses wanting to move into the area; and approval would negatively impact neighborhood property values. By a three to one vote, the Zoning Board again recommended that the Board deny LC's application.

With the second negative recommendation from the Zoning Board, the application came before the Board again on May 18, 2017. After considering the information and arguments from the Scanlons in opposition to the application, the Board unanimously voted to approve the application, with stipulations.

Twenty-nine days later, on June 16, 2017, the Scanlons filed a "Petition for Review Under K.S.A. 12-760 and for Injunction," seeking reversal of what they characterized as the Board's "unlawful and unreasonable and void" approval of the application, a stay of the Board's resolution effectuating the approval, and an order enjoining any further action that would allow the proposed use. In the petition, the Scanlons claimed K.S.A. 12-760 provides a "right to seek review of the lawfulness and reasonableness of the approval of [a] CUP [a]pplication." They argued that under Article 23, § 4.A.3 of the zoning regulations, it was unlawful and unreasonable for the Board to approve the CUP, and the approval "was, in effect, a rezoning of the property without following the proper procedures." In its response, the Board denied the validity of the Scanlons' claims and asserted the district court lacked subject matter jurisdiction in the case.

The Scanlons filed a motion for summary judgment in September 2017 and, on November 7, 2017, the Board filed a motion for dismissal for lack of subject matter jurisdiction. The Board's motion argued the Scanlons failed to comply with the requirements of K.S.A. 19-2964 and K.S.A. 19-223 for proper notice and bond and that these defects deprived the district court of subject matter jurisdiction.

Two weeks after the Board's motion, the Scanlons filed an amended petition asking for review, as before, "under K.S.A. 12-760," but with an added alternative authority "under K.S.A. 19-2964 and 19-223." A week later, they filed a motion for leave to file that amended petition.

On February 7, 2018, the parties presented arguments on the Board's motion to dismiss and the Scanlons' motion for leave to amend. The following week the district court filed its memorandum decision granting the motion to dismiss. Preliminarily, the district court clarified that the Scanlons' amended petition had been filed "prematurely" by the court clerk, without leave of the court. The decision stressed that the district court's jurisdiction is statutory and that "unless [the Scanlons] have complied with the applicable statutory requirements, the [d]istrict [c]ourt lacks subject-matter jurisdiction."

The essential jurisdictional dispute between the Scanlons and the Board centered on just what the requirements were for the district court to have jurisdiction to review the Board decision on the CUP: the Scanlons contended they had complied with the requirements of the applicable statute, K.S.A. 12-760; the Board argued it was K.S.A. 19-2964 that controlled and the Scanlons had failed to comply with both the notice and bond provisions of that section.

The district court resolved the first part of that dispute by identifying K.S.A. 19-2964 as the applicable jurisdictional statute for this case and, although the court found no appellate cases focused on K.S.A. 19-2964, it stated that other Kansas cases have "unequivocally required statutory compliance" for appeals of this type to be heard in Kansas district courts.

The district court discussed the difference between the two statutory approaches:

4

"K.S.A. 19-2964 and K.S.A. 12-760 are parts of two different zoning schemes—the former applies specifically to Johnson County and the latter applies to other cities and counties—and because [the Scanlons] challenge a zoning decision issued under the specific Johnson County scheme, [the Scanlons] must use K.S.A. 19-2964."

The Board made the decision on the CUP application on May 18, 2017, and agreed the Scanlons brought their action within 30 days of that date, as required by K.S.A. 19-2964. The Scanlons then gained service of process on Amber Duren, a "senior executive assistant," on June 20, 2017. The district court observed that the statute required service on the *clerk* of the Board, and not the Board generally, and considered the Scanlons' contention that the court should disregard the notice requirement because a prior action of the Board had "eliminate[ed] the position of the clerk of the Board of county commissioners." However, the district court pointed out that the Board had not eliminated the role. Its resolution simply reassigned the clerk's duties "to the Director of the Department of Records and Tax Administration, acting in the capacity of the County Clerk."

The Board contended that, even assuming service on Duren satisfied the statutory duty to serve the clerk of the Board, it was 33 days after the CUP decision—beyond the 30-day period set in K.S.A. 19-223. The district court entertained the possibility that, if the Scanlons had given the Board *some* notice within 30 days of the decision, even if not on the specific person designated in the statute, an equitable argument for substantial compliance might have been made. But the Scanlons failed to point to any notice to the Board, in any form, within 30 days of the decision.

The district court also rejected the Scanlons' contention that allowing them to amend their petition would let them cure any jurisdictional defects through relation back under K.S.A. 2017 Supp. 60-215(c). From the cases the Scanlons relied on, the court reasoned that relation back could only assist them if the requirements for the court to

5

have jurisdiction were already met. The district court contrasted that with the Scanlons' circumstances, in which the current statute required written notice to the Board's clerk within 30 days of the decision—a period that had passed without notice in any form and could not be reached again by an amended petition. Since the proposed amended petition could not cure the jurisdictional defect, the court denied the motion to amend.

Although the district court found that the Scanlons did not comply with K.S.A. 19-223's requirement that a bond be executed to the county, which it found to be another jurisdictional element, the court acknowledged some room for argument about the necessary time in which the bond must be given. The district court did not decide that question, however, in light of the failure to meet the jurisdictional notice requirement.

The district court granted the Board's motion to dismiss for lack of subject matter jurisdiction and denied the Scanlons' motion for leave to file their amended petition. The Scanlons timely appeal.

ANALYSIS

The Scanlons assert broadly that the district court committed error by dismissing their suit and denying their motion to amend their petition. More particularly, they claim error in both the dismissal and denial because compliance with the notice and bond requirements of K.S.A. 19-223 was not necessary to establish subject matter jurisdiction and, if it was, they complied, substantially complied, or could not comply because there was no clerk of the Board.

*Standard of Review*

"We review a district court's decision granting a motion to dismiss under a de novo standard of review. *Wachter Management Co. v. Dexter & Chaney, Inc.,* 282 Kan.

6

365, 368, 144 P.3d 747 (2006)." *Chelf v. State*, 46 Kan. App. 2d 522, 528, 263 P.3d 852 (2011).

Whether jurisdiction exists is a question of law over which this court's scope of review is unlimited. *State v. Dull*, 302 Kan. 32, 61, 351 P.3d 641 (2015). Here, the jurisdictional question involves statutory interpretation, which is subject to unlimited review. *State v. Delacruz*, 307 Kan. 523, 529, 411 P.3d 1207 (2018).

*Which statute?*

At the heart of this appeal is identification of the correct statute for the Scanlons' appeal from the Board's decision on LC's CUP application. The Scanlons filed their "Petition for Review Under K.S.A. 12-760 and for Injunction" on June 16, 2017. K.S.A. 12-760(a) requires only a timely filing: "Within 30 days of the final decision of the city or county, any person aggrieved thereby may maintain an action in the district court of the county to determine the reasonableness of such final decision."

If that was the correct procedure, the Scanlons clearly filed within 30 days of the Board's May 18, 2017 decision and complied with the statute's requirement for jurisdiction in the district court to hear their appeal.

The Board contends, however, that K.S.A. 12-760 does not apply to the Scanlons' appeal from a Johnson County zoning decision. Instead, the Board argues K.S.A. 19-2964 is the only available route for instituting an appeal from Johnson County zoning decision. K.S.A. 19-2964 states:

> "Any person having an interest in property affected may have the reasonableness
> of any such act, regulation or amendment thereto determined by bringing an action
> against the board of county commissioners in the manner set out in K.S.A. 19-223, and

7

amendments thereto, within 30 days after the making of a decision on such act, regulation or amendment. Such action shall be brought in the district court of the county."

If K.S.A. 19-2964 applies, there are procedural steps it incorporates by requiring the aggrieved party to "bring[] an action . . . in the manner set out in K.S.A. 19-223." K.S.A. 19-223 states:

> "Any person who shall be aggrieved by any decision of the board of commissioners may appeal from the decision of such board to the district court of the same county, by causing a written notice of such appeal to be served on the clerk of such board within thirty days after the making of such decision, and executing a bond to such county with sufficient security, to be approved by the clerk of said board, conditioned for the faithful prosecution of such appeal, and the payment of all costs that shall be adjudged against the appellant."

In 1984, the Legislature enacted a statutory scheme for planning and zoning in urban areas. See K.S.A. 19-2956 et seq. The purpose of the act was "to authorize *any county designated as an urban area under the provisions of K.S.A. 19-2654* . . . to prepare and adopt plans and land use regulations with multiple advisory bodies so as to bring unity, consistency and efficiency to the county's planning efforts." (Emphasis added.)

K.S.A. 2018 Supp. 19-2654(a) declares: "The area comprising Johnson [C]ounty is hereby designated as an urban area as permitted by section 17 of article 2 of the constitution of the state of Kansas." That urban area designation for Johnson County was in effect at all times relevant to this case. As of July 1, 2018, Sedgwick County was added to K.S.A. 19-2654 as the second urban area. K.S.A. 2018 Supp. 19-2654(b). K.S.A. 19-2964 is the section of that 1984 urban area legislation that permits appeals to the district court to challenge the reasonableness of acts and regulations for planning and land use and prescribes the procedure for doing so. K.S.A. 12-760, under which the

8

Scanlons proceeded, performs the parallel function in the statutory planning and zoning provisions for other, non-"urban area" counties. See K.S.A. 12-741 et seq.

The Scanlons offer no persuasive reason why the generally applicable procedure in K.S.A. 12-760 should have been used for their appeal from a Johnson County zoning decision when K.S.A. 19-2964 uniquely applied to appeals from zoning decisions in Johnson County—at that time the only designated urban area. The only proper basis for the Scanlons' appeal was through the statute that was specifically applicable to appeals from Johnson County zoning decisions.

*Were the procedures of K.S.A. 19-223, incorporated into K.S.A. 19-2964, jurisdictional?*

Over many years our courts have considered the notice and bond requirements in K.S.A. 19-223. The Kansas Supreme Court analyzed a claim disputing a special tax assessment levied by the Cowley County Board of County Commissioners. *Barnes v. Board of Cowley County Comm'rs*, 293 Kan. 11, 259 P.3d 725 (2011). In *Barnes*, the county imposed a special tax assessment against a real estate parcel for cleanup costs incurred in removing "dangerous structures and unsightly conditions" on the property. 293 Kan. at 12. The property owners challenged the special assessment by filing a petition seeking an injunction under K.S.A. 60-907 to prevent the county from enforcing its tax lien or attempting to collect on the assessment. The county moved to dismiss on the basis the district court lacked subject matter jurisdiction, arguing an appeal pursuant to K.S.A. 19-223 within 30 days of the county's cleanup order was the exclusive way to gain jurisdiction for court review of a judicial or quasi-judicial order by the county. The district court found it lacked jurisdiction but nonetheless proceeded to deny the property owners' claims on the merits; the owners appealed.

A panel of this court affirmed the district court finding that it was without jurisdiction. *Barnes v. Board of Cowley County Comm'rs,* No. 99,609, 2009 WL 929117,

9

at *1 (Kan. App. 2009) (unpublished opinion). The Supreme Court granted a petition for review "solely to determine whether the Court of Appeals erred in finding no subject matter jurisdiction." 293 Kan. at 16.

At the outset, the Supreme Court established that:

"Courts have no inherent appellate jurisdiction over official acts of administrative officials or boards, unless there is a statute providing for judicial review. Absent such a statutory provision, appellate review of administrative decisions is limited to claims of relief from illegal, fraudulent, or oppressive official conduct through the equitable remedies of quo warranto, mandamus, or injunction. [Citation omitted.]" 293 Kan. at 17.

In that case, as in the case of the Scanlons' claims, no claims were asserted that could give rise to jurisdiction through any of the nonstatutory means.

The Supreme Court began its analysis by delineating the forms the authority of a board of county commissioners may take: "Public agencies and boards exercise legislative, administrative, judicial, and quasi-judicial powers. . . . *And it is well established that K.S.A. 19-223 is the exclusive means to review Board conduct that is judicial or quasi-judicial in nature.*" (Emphasis added.) 293 Kan. at 17-18. In contrast, the court observed that "it is well established that the assessment of a tax is administrative in nature." 293 Kan. at 21. The court found the county had acted in a quasi-judicial capacity when it investigated, weighed facts, found the property out of compliance with the county resolution, and issued a cleanup order. A challenge to those acts, therefore, had to comply with K.S.A. 19-223. When the county imposed the special tax assessment, however, it exercised its administrative authority. 293 Kan. at 21.

Because some of the property owners' claims related to the issuance of the order and others to later actions arising from the process of determining and assessing the tax, the Supreme Court individually considered the claims. The court affirmed the findings by

10

the district court and Court of Appeals that the failure to comply with K.S.A. 19-233 deprived the court of jurisdiction for those claims that had contested the cleanup order. 293 Kan. at 24.

In *Kaplan v. Board of Johnson County Comm'rs*, 269 Kan. 122, 3 P.3d 1270 (2000), the Supreme Court reviewed an appeal from a decision of the Board of County Commissioners of Johnson County acting in their capacity as fence viewers to settle a dispute between neighbors. One set of neighbors, the Kaplans, were dissatisfied with the decision of the fence viewers and filed a petition in the district court for review under the Act for Judicial Review and Civil Enforcement of Agency Action, K.S.A. 77-601 et seq., (KJRA). The Kaplans "did not serve a notice of appeal on or file a bond with the county clerk." 269 Kan. at 124. The county and the other neighbors filed motions to dismiss for lack of subject matter jurisdiction. The district court denied the motions, finding the KJRA did apply to the appeal, and affirmed the fence viewing decision within the structure of that Act.

The Kaplans appealed and the county cross-appealed, again asserting a lack of subject matter jurisdiction. The Supreme Court agreed that the KJRA was not the vehicle for appeal from a fence viewing decision because the KJRA applies to state agency actions, not county actions. 269 Kan. at 125. Therefore, the court found the Kaplans needed to "follow statutory procedure for appeals from county commissioner actions," which were governed by K.S.A. 19-223. 269 Kan. at 126. The court concluded: "The Kaplans' appeal should have been taken pursuant to K.S.A. 19-223. *Having failed to follow K.S.A. 19-223, the trial court and this court are without jurisdiction to hear the appeal.*" (Emphasis added.) 269 Kan. at 126.

Fifty years before *Kaplan*, the Supreme Court decided *Buxton v. Ford County Comm'rs*, 170 Kan. 148, 223 P.2d 734 (1950). In that case, Buxton and Beck filed a claim against Ford County, which the board of county commissioners denied. Buxton and Beck

11

appealed, and the County moved for dismissal, asserting the bond Buxton and Beck had filed failed to comply with the requirements of G.S. 1935, 19-223, which was substantively identical to the present K.S.A. 19-223. The claimed error centered on the phrase "with sufficient security," since the bond that had been presented, approved, and filed had been executed only by the principal, without a surety. The district court dismissed the appeal for want of jurisdiction, declaring the bond "wholly void." 170 Kan. at 149. Given those facts, the Supreme Court reversed, holding in part that "when such a bond, without a surety, is tendered to and approved by the clerk of the board, and is thereafter filed with the clerk of the district court, *it confers jurisdiction upon the district court to hear and determine the appeal upon its merits.*" (Emphasis added). 170 Kan. at 151.

Finally, in *Justice v. Board of Wyandotte County Comm'rs,* 17 Kan. App. 2d 102, 835 P.2d 692 (1992), this court also found compliance with the notice and bond requirements in K.S.A. 19-223 are prerequisites to statutory jurisdiction. In that case, all parties agreed the notice and bond requirements of K.S.A. 19-223 were not satisfied, which deprived the district court of jurisdiction. The plaintiff residents contended they did not need to comply with K.S.A. 19-223 because they were seeking review of a legislative decision, and this court found they had stated a claim that fit within the exception allowing jurisdiction to grant equitable relief. 17 Kan. App. 2d at 106.

The Scanlons submit they did all they should to invoke the district court's jurisdiction. They argue they:

> "[E]ngaged in every core element of the law allowing review of the [Board's] zoning decision granting the [CUP]. Within 30 days of the decision, the Scanlons, having an interest in the property, filed an action in District Court challenging the reasonableness and legality of the decision. These three elements—timeliness, a challenge to reasonableness and legality by someone having an interest, filed as a civil action in district court—are the essentials found in all the zoning review statutes throughout

12

Kansas history, including K.S.A. 19-2964. Satisfying these requirements engaged the right to review. The District Court had jurisdiction to consider the request to amend the Petition and the merits of the Scanlon's claim."

They also contend K.S.A. 19-223 is not jurisdictional because it "does not have the 'hallmarks' of a jurisdictional decree and does not speak in terms of jurisdiction or refer to the jurisdiction of the district courts." Therefore, they reason that the notice and bond requirements in K.S.A. 19-223 are "akin to claims-processing or directory requirements."

The Scanlons also challenge the directive in K.S.A. 19-2964 to bring an action under that section "in the manner set out in K.S.A. 19-223." They assert that phrase is not a mandate because it "connotes a style that is typical of . . . the thing identified, rather than a style that is essential or of the essence of the thing," relying on a definition of "in-the-manner-of-somebody/something" from the "Longman Dictionary of Contemporary English Online."

The nature of the Board's action that is before us—considering and granting a conditional use permit for a particular tract of land—is quasi-judicial, not legislative or administrative. See *Zimmerman v. Board of Wabaunsee County Comm'rs*, 289 Kan. 926, 950-51, 218 P.3d 400 (2009) ("We observe that even when concerning a conditional use permit on a single tract of land, *i.e., clearly a quasi-judicial action*, the Court of Appeals has examined only aesthetics as a factor." [Emphasis added.]); *Tri-County Concerned Citizens, Inc. v. Board of Harper County Comm'rs*, 32 Kan. App. 2d 1168, Syl. ¶ 4, 95 P.3d 1012 (2004) ("When a governing body addresses zoning a particular parcel of land, it is exercising a quasi-judicial function.").

The law of this state concerning jurisdiction for an appeal from a quasi-judicial act taken by a board of county commissioners, as explained consistently by our Supreme Court, is directly contrary to the Scanlons' blithe dismissal of the K.S.A. 19-223 notice

13

and bond requirements as mere "claims-processing" or "directory" provisions. And although "in the manner of" may well hold a solely descriptive meaning in art or fashion, the plain language of K.S.A. 19-2964 directs that if an interested party wants to bring such a challenge, K.S.A. 19-223 is the procedure to be followed. The plain language of that section, especially in light of the cases above, is not consistent with the optional or "something in the nature of" meaning the Scanlons would have us adopt.

We find the Scanlons needed to proceed with their district court action under K.S.A. 19-2964, and they were required to comply with the notice and bond provisions of K.S.A. 19-223 if they were to establish jurisdiction for the district court to hear their claim. The district court found the Scanlons failed to meet those requirements for both notice and bond, and those findings are supported by the record. The Scanlons' sole act in compliance with K.S.A. 19-2964 was filing their suit within 30 days of the Board's decision. The district court dealt thoroughly and well with the Scanlons' arguments about substantial compliance, impossibility, and relation back. As the district court laid out, none of those arguments is persuasive or effective, and we need not repeat that court's well-considered reasoning.

The Scanlons failed to take the steps necessary to gain jurisdiction for the district court to hear their case and the failures could not be cured by amendment. The district court correctly denied the motion to amend and dismissed the case.

Affirmed.